IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD ISLER,
    Plaintiff,

v.

KEYSTONE SCHOOL DISTRICT,
JEAN ATKIN GOOL, JOHN R. SLAGLE,
TERRI KAHLE, GREGORY A. BARRETT,
JAMES A. BEARY, R. JEFFREY KLINE,
THOMAS MCCOY, MARYLIN STEMPECK,
KENNETH SWARTFAGER, and VERNON
LAUFFER,

    Defendants

07cv1335
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

**I. Introduction.**

On October 2, 2007, plaintiff Ronald Isler filed a three count complaint against the Keystone School District and ten individuals who are members, officers or employees of the Keystone School District ("District") Board of Directors ("Board"), setting forth the following causes of action: Count I, a civil rights claim under 42 U.S.C. § 1983 alleging that defendants retaliated against him for engaging in protected speech concerning a disabled student ("Student Doe"), in violation of the First and Fourteenth Amendments, when they refused to renew his contract to provide bus services for students in the District after the 2006 school year; Count II, a retaliation claim under the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., alleging defendants retaliated against plaintiff because of his "advocacy" on behalf of Student Doe; and Count III, a state claim alleging a violation of the Pennsylvania Whistleblower Act, Purdon's Pa. Stat. Ann, tit. 43, §1423, based on the same allegedly retaliatory conduct. All of the claims against the individual

defendants are made in their official and individual capacities as Board members, officers or employees of the District.

The "Factual Background" for these claims is alleged at Section IV, ¶¶ 45-78, of the Complaint. Plaintiff was an independent contractor for the District for 22 years, and was operating at relevant times pursuant to a contract that was due to expire at the end of the 2006-2007 school year. Complaint, ¶¶ 47-51. Beginning in September 2006, "Student Doe," a "seriously ill and/or disabled student," was assigned to plaintiff's bus, and according to the route design, was the last student picked up in the morning, and the last student dropped off in the afternoon. Complaint, ¶¶ 54-56.

According to the Complaint, "[i]n or about February of 2007," plaintiff noticed that Student Doe was becoming agitated and combative during the long afternoon ride home, and would, according to plaintiff, "sometimes fall unconscious." Complaint, ¶ 57. Plaintiff claims that, "after discussions with Student Doe's father," Plaintiff "learned" that defendants were not accommodating the student's medical needs, and that the long bus ride was exacerbating his condition. Complaint, ¶¶ 58-59. Plaintiff claims that he thereafter "[r]epeatedly advised Defendants that Student Doe's health was in jeopardy," including that he "proposed to defendant [Vernon Lauffer, the District's Business Manager, who was responsible for bus routes] that his bus route be slightly adjusted to accommodate Student Doe's medical needs . . . with minimal disruption." Complaint, ¶¶ 59-62. Plaintiff also claims to have "advised one or more members of Defendant Keystone's board of the situation . . . ," and "made several efforts to complain on behalf of Student Doe." Complaint, ¶¶ 64-65.

Plaintiff's suggestions were met with hostility, although "[e]ventually," the District

provided alternative "special needs" transportation for Student Doe. Complaint, ¶¶ 63, 66. Plaintiff claims that this alteration in Student Doe's transportation was "as a result of Plaintiff's complaints and complaints by Student Doe's father . . . ." Complaint, ¶ 66. Nevertheless, according to plaintiff, the District retaliated against him for his "protected speech" on behalf of a disabled student when the Board voted not to renew his contract on June 25, 2007. Complaint, ¶¶ 69-78.

Defendants' Answer consisted mostly of general denials because, after reasonable investigation, defendants were at that time without sufficient knowledge or information to respond more specifically. However, as to the plaintiff's averments that he repeatedly advised defendants about Student Doe's health issues, defendants state: "It is denied that Plaintiff repeatedly advised Defendants that Student Doe was being placed in jeopardy and at risk of serious harm or death as a result of the bus ride. To the contrary, Plaintiff refused to permit Student Doe to ride his bus due to behavior issues and at no time prior to his refusal did he report a perceived health risk to Student Doe." Defendants' Answer, ¶ 60.

On December 5, 2007, this Court entered an Order of Court Denying Motion to Dismiss (doc. no. 9), finding that defendants' motion to dismiss raised issues that were premature in the absence of discovery, and therefore denied the motion "without prejudice to defendants raising the issues set forth therein in a motion for summary judgment at the appropriate time following discovery." Now before the Court, after extensive discovery, is Defendants' Motion for Summary Judgment (doc. no. 39). After careful consideration of the motion, plaintiff's response, the briefs in support and in opposition to summary judgment, and a rather large number of supporting deposition transcripts, documents and other materials submitted by both parties, the

Court will grant summary judgment in defendants' favor on all federal causes of action, as to which plaintiff cannot sustain his burden of proof, and will relinquish supplemental jurisdiction over the Pennsylvania Whistleblower Act claim.

**II. Summary Judgment Standards**

**A. In General**

"Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.*.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving

4

party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

    B.  **Employment Discrimination and Retaliation -*McDonnell Douglas***

At the summary judgment stage, claims of discrimination and of retaliation under the anti-discrimination statutes are both analyzed under the burden- shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799-800 (3d Cir. 2003) (Title VII and ADEA retaliation and discrimination claims follow the *McDonnell Douglas* evidentiary burden framework); *Goosby v. Johnson & Johnson Medical, Inc.,* 228 F.3d 313 (3d Cir. 2000) (claims for both discrimination and retaliation under Title VII and Pennsylvania Human Relations Act follow the *McDonnell Douglas* evidentiary burden framework). Similarly, the *McDonnell Douglas* framework applies to both discrimination and retaliation claims brought under the auspices of 42 U.S.C. § 1983. *St. Mary's Honor Society v. Hicks*, 509 U.S. 502, 506 n.1 (1983); *Stewart v. Rutgers, the State University*, 120 F.3d 426, 432 (3d Cir. 1997) (*McDonnell Douglas* framework deemed applicable to allegation of racial discrimination under 42 U.S.C. § 1983).

As summarized in *Stanziale v. Jargowsky*, 200 F.3d 101 (3d Cir. 2000):

> The parties' burdens in establishing and defending claims under the ADEA and Title VII are determined by the procedure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 234 (3rd Cir.1999). A plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of

5

> a prima facie case of discrimination. *Id*. If a plaintiff establishes a prima facie case, " '[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the [adverse employment decision].' " *Id*. at 235 (*quoting Keller v. Orix Credit Alliance, Inc*., 130 F.3d 1101, 1108 (3rd Cir. 1997) . . . . An employer need not prove, however, that the proffered reasons actually motivated the . . . decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3rd Cir. 1994). If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Keller*, 130 F.3d at 1108; *Fuentes*, 32 F.3d at 763.

200 F.3d at 105 (parallel and additional citations and footnotes omitted). *See also Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000) ("the burden-shifting framework of *McDonnell Douglas* . . . applies to ADA disparate treatment and retaliation claims.").

In the retaliation context, therefore, if the employee establishes a prima facie case of retaliation, the *McDonnell Douglas* approach "'shifts [the burden] to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006), citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997).

**C. First Amendment Retaliation - Prima Facie Case**

To prevail on a First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must prima facie establish that (1) he engaged in protected speech, (2) his interest in the protected speech outweighs the employer's countervailing interest in promoting the efficiency of the public service it provides to its employees, and (3) the protected activity was a

6

substantial or motivating factor in the alleged retaliatory action. *Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001). More recently, the United States Court of Appeals for the Third Circuit recognized that, in the public employer-employee context, the test had been significantly modified by the United States Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006) ("the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities.").

In *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008), the Court of Appeals explained:

> The District Court evaluated [plaintiff's] First Amendment retaliation claim under the following three-step framework: (1) the employee must demonstrate that his/her speech is protected, that is, it addresses a matter of public concern and the "employee's interest in the speech outweighs" the employer's countervailing interest "in promoting workplace efficiency and avoiding workplace disruption" (i.e., the balancing test established in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)); (2) the employee must prove that his/her speech was "a substantial or motivating factor" in the retaliatory action against him/her, which, if proven; (3) shifts the burden to the employer to prove that the "allegedly retaliatory action would have been taken absent the protected [speech]." *Id*. at 514-15 (quoting *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006)).
>
> In undertaking the requisite analysis, the District Court relied on *Baldassare v. New Jersey*, 250 F.3d 188, 195-97 (3d Cir. 2001) . . . .
>
> \* \* \*
>
> In analyzing Reilly's retaliation claim, the District Court asked [only] whether Reilly's speech involved a matter of public concern and whether the *Pickering* balancing weighed in favor of Reilly. . . . We have stated that following *Garcetti*,
>
>> [a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made [i.e., the *Pickering* balancing test].

7

> *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti*, 547 U.S. at 418. *Garcetti* simply "narrowed the Court's jurisprudence in the area of employee speech" by further restricting the speech activity that is protected. . . . Here, the District Court concluded that Reilly's speech was a matter of public concern and that the *Pickering* balancing favored Reilly. See *Reilly*, 427 F.Supp.2d at 515. Therefore, the effect of *Garcetti* in the context of this appeal is limited to the question whether Reilly spoke as a citizen when he testified at the Munoz trial.

*Reilly*, 532 F.3d at 224-25, 228 (parallel and other citations omitted).

The First Amendment protects the speech of independent contractors of public entities to the same extent as it protects that of public employees, and the legal analysis is the same. *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006), citing *Bd. of Commr's., Wabaunsee v. Umbehr*, 518 U.S. 712, 721 (1996).

### D. ADA/ Rehabilitation Act - Prima Facie Case

The ADA contains the following anti-retaliation provisions:

> § 12203. Prohibition against retaliation and coercion
>
> (a) Retaliation
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b) Interference, coercion, or intimidation
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203.

8

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse*, 126 F.3d at 500. This is the same prima facie test for retaliation applied in the context of any of the anti-discrimination statutes. See *id.*; *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (collecting cases) (elements of retaliation claim under the Rehabilitation Act same as under 42 U.S.C. § 1983 or ADA); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002) ("we note that in order to establish a prima facie case of illegal retaliation under the [ADA and Age Discrimination in Employment Act ("ADEA")] anti-discrimination statutes, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."), citing *Krouse*, 126 F.3d at 500. A defendant may defeat a claim of retaliation "by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." *Id.*, citing *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

**III. Defendant's Motion for Summary Judgment**

Defendants fire a shotgun salvo of issues in support of summary judgment, including that plaintiff has no standing, has failed to exhaust his administrative remedies, has failed to demonstrate a prima facie case on any of his claims, and has failed to rebut the legitimate business reasons offered by defendants for failing to renew his contract (i.e., reduction in bus

9

routes). While defendants' standing argument is without merit[1] and their exhaustion argument is dubious, the Court need not and does not address most of defendants' arguments, as the Court agrees that plaintiff has failed to establish a prima facie case of retaliation under section 1983, the ADA or the Rehabilitation Act. There simply is no support on the record for plaintiff's fundamental thesis that he engaged in protected speech or activity in the form of advocacy on behalf of a disabled student.

**IV. Legal Analysis.**

**A. The Operative Facts.**

**1. Plaintiff's Pretrial Statement.** In Plaintiff's Pretrial Statement, he lays out the factual foundation for his retaliation claims as follows:

> Plaintiff engaged in advocacy on February 23, 2007 after Student Doe suffered a major seizure on Plaintiff's bus. Plaintiff spoke with Vernon Lauffer on the aforesaid date and suggested that he reverse his bus route in the afternoon as a result of Student Doe's medical condition so that Student Doe would only be on the bus for five minutes or less. *See* Plaintiff's deposition at 167:2-10. Lauffer testified that he remembers Plaintiff's advocacy on Student Doe's behalf. *See* Lauffer Deposition at pp 17-18. He reacted to it in a hostile manner, sticking his finger in Plaintiff's face and telling him it didn't make any difference what condition Student Doe was in, he was not making any exceptions for him. *See* Plaintiff's Deposition at 167.
>
> Plaintiff engaged in advocacy on behalf of Student Doe again on February 25, 2007. Because he was upset by Lauffer's hostile reaction to his efforts to help Student Doe as aforesaid, he also reported the situation involving Student Doe' transportation needs to defendant Tiki Khale (the vice president of the District's School board, *see* Complaint ands Answer, paragraph 17). *See* Plaintiff's Deposition at 169-170. Ms. Kahle told plaintiff to keep her informed. *Id*.

Plaintiff's Pretrial Statement (doc. no. 66), at 3-4.

---

[1] See *Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002) (recognizing the standing of a third-party to claim retaliation under plain language of ADA for adverse actions taken against that person as a result of advocacy on behalf of another).

The factual averments of plaintiff's complaint, statement and counter-statement of material fact and in his memorandum of law are long on innuendo but woefully short on specifics regarding his alleged "protected speech," and add no meat to the bare-bones allegation that he engaged in "protected speech" or oppositional activity. Just calling speech "advocacy" does not make it so.

**2. Plaintiff's Version of Events.** According to plaintiff, Student Doe had a "major seizure" on his bus on February 23, 2007, and he helped the boy recover from an incident wherein he went "ballistic"; plaintiff attempted to call 911 but his cell phone was not working; plaintiff attempted to use his CB radio but no one answered at the school; when he dropped the student off at his home, plaintiff spoke with the boy's father, who informed plaintiff of Student Doe's medical condition and criticized the District for not accommodating his son and his special transportation needs. Plaintiff's Response to Defendants' Statement of Uncontested Facts and Counterstatement of Uncontested Facts (doc. no. 61) at ¶¶ 4-32.

Plaintiff states that he immediately went to Student Doe's school to report the incident and "advocate" for Student Doe, but the secretary told him that the officials to whom he would have reported (the grade school principle and the guidance counselor) were unavailable; he told the secretary that he had something important to report, and that Student Doe had gone "ballistic" on his bus; plaintiff never submitted an incident report, but he claims he drafted one but did not leave it with the secretary because "of the seriousness of the incident . . . ." *Id*. at ¶¶ 42-51. Plaintiff claims that he spoke with Vernon Lauffer and "suggested that he reverse his bus route in the afternoon so that Student Doe would only be on the bus for five minutes or less," and that Lauffer's reaction was hostile. *Id*. at ¶ 53-55. Plaintiff did not "think it necessary to write or

11

leave the incident note" at that point because he "had reported the incident in detail to Vern Lauffer. . . ." *Id*. at ¶ 56.  On February 25, 2007, however, plaintiff states that he reached Board member Tiki Kahle and "explained the incident on the bus." *Id*. at ¶ 57-60.  Plaintiff asserts that he continued to drive Student Doe to and from school from the date of the incident through March 6, 2007, when Student Doe was "removed" from his bus in lieu of the special needs van.

        **3. Defendants' Version of Events.**  Student Doe's mother and father, as well as Ms. Tracie Stanczak, Student Doe's Therapeutic Support Services ("TSS") provider who the parents called to transport their son to school immediately after the incident, all peg the bus incident as occurring on February 9, 2007.  Moreover, the parents indicate it was not the boy's father but, rather, his mother who talked with plaintiff the day he "kicked" their son off the bus.  The father also denies telling plaintiff the day of the incident that the District had previously refused to accommodate their son's medical condition, or that he ever said his son had seizures or was ever unconscious on the bus.

    After the incident, the father spoke with District officials, who agreed that a special needs van would transport Student Doe to and from school.  Permanent alternative arrangements were finalized on March 6, 2007.  The TSS's notes support the February 9, 2007 date, and that she drove Student Doe to and from school from February 9th until the alternate arrangements for van transportation had been finalized.  The deposition testimony of the various school officials and employees contradict that of plaintiff in many if not most ways with regard to his "reporting" of the incident.

        **4. No Genuine Dispute of Material Fact.**  There is certainly a factual dispute over what happened on plaintiff's bus in February, 2007, and when it happened, but the Court is

hard pressed to call it a "genuine" dispute. Defendants offer consistent, corroborating testimony of three neutral fact witnesses, the father and mother of Student Doe and his assigned special needs teaching assistant, all of whom support defendants' contention that the incident actually occurred on February 9, 2007, not on February 23, 2007, and that plaintiff informed the mother on February 9th that Student Doe would no longer be allowed to ride on his bus. (In the parents' words, plaintiff "kicked him off the bus," but they did not mean that he actually, physically kicked Student Doe off the bus, just that he would no longer ride him on the bus.) The parents immediately thereafter made alternate arrangements with Ms. Stanczak, the TSS, who transported Student Doe to school while permanent arrangements were being negotiated with officials for the District. On March 6, 2007, the District officially removed the student from plaintiff's bus and provided a special needs van to transport him to and from school.

Other than plaintiff's deposition testimony, he has adduced little or no corroboration for his version of the February 2007 events, testimonial or documentary. Plaintiff's deposition testimony notwithstanding, everything else on the record demonstrates that after February 9, 2007, Student Doe never rode plaintiff's bus again. What documentary evidence exists also supports the defendants' version.

### B. Plaintiff Cannot Prove He Engaged in Protected Speech or Activity.

It is highly unlikely that a reasonable fact finder would credit plaintiff's version of events over the contradictory version of three neutral witnesses, whose consistent testimony is also consistent with the deposition testimony of the individual Defendants and other employees and officials of the District, and with supporting documents. Although the quantum of evidence supporting defendants' version of events overwhelms that supporting plaintiff's version, the

13

Court does not engage in credibility determinations on a motion for summary judgment. Regardless of the outcome of the factual dispute concerning the details of the bus incident, the dispute is *immaterial*. Assuming that a reasonable fact finder would credit his version about the bus incident, it is apparent on the record that plaintiff did not engage in protected speech on a matter of public concern as a citizen, as required for a section 1983, First Amendment retaliation claim, nor did he advocate on Student Doe's behalf or otherwise oppose unlawful discrimination within the meaning of the ADA and Rehabilitation Act. Therefore, there is no genuine dispute of *material fact*, and plaintiff cannot sustain his prima facie burden of proof for retaliation.

**1. First Amendment.** Whatever happened on the bus in February 2007 and afterward (i.e., plaintiff's reports to the business manager and a Board member), there is no dispute that it happened in the course of performing his official duties. Plaintiff concedes that his alleged "reporting" of the incident was pursuant to his duties as a school bus driver for the District. Because the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to his official responsibilities, *Garcetti*, 547 U.S. at 421, plaintiff's speech to school officials regarding the Student Doe incident on the bus and alternative routes is not protected by the First Amendment, and he cannot meet his prima facie burden under section 1983. See *Ryan v. Shawnee Mission Unifed Sch. Dist. No. 512*, 437 F.Supp. 2d 1233 (D.Kan. 2006) (comments regarding inadequacies of district's disabled children services were related to school therapist's job, and were consequently not entitled to First Amendment protection).

Moreover, for the reasons discussed below, plaintiff's speech was not on a matter of public concern, but was merely a discussion with the business manager and a Board member

about a private employment matter, the behavior of an assigned student on his route and a suggestion to alter the route, not "advocacy" for a disabled student.

      **2. ADA/ Rehabilitation Act.** The first element of plaintiff's prima facie case for retaliation under these statutes is that he engaged in protected activity, but his own words disprove that element. Plaintiff studiously avoids specifying exactly what it was he was advocating, and exactly what he said. His best case scenario is advanced in his Pretrial Statement, wherein he claims he engaged in protected activity on two occasions. First, plaintiff claims that on February 23, 2007, he "spoke with Vernon Lauffer . . . and suggested that he reverse his bus route in the afternoon as a result of Student Doe's medical condition so that Student Doe would only be on the bus for five minutes or less." Plaintiff's Pretrial Statement (doc. no. 66), at 3. Second, plaintiff claims that he "engaged in advocacy on behalf of Student Doe again on February 25, 2007 . . . [when] he also reported the situation involving Student Doe's transportation needs to defendant Tiki Khale (the vice president of the District's School board . . . ," *id*. at 4, which elsewhere he characterizes as "explaining the incident" to Ms. Kahle. This is not advocacy for the disabled student, nor is it "engaging in protected activity" as that prima facie element is discussed in the retaliation precedent.

      **3. Protected Activity.** An employer cannot retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA, which is protected activity. *Williams v. Philadelphia Housing Auth. Police Dep't.*, 380 F.3d 751, 758-59 (3d Cir. 2004). A plaintiff alleging a claim of retaliation need not demonstrate that the conduct he or she opposed was actually a violation of the law, so long as he or she possessed a reasonable, good faith belief that the underlying actions of the employer actually violated the law. *Aman v. Cort*

15

*Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (discussing a Title VII retaliation case). However, not every complaint about unfair practices or perceived slights qualify as "protected activity." *Barber v. CSX Dist. Serv.*, 68 F.3d 694, 701-02 (3d Cir. 1995).

In *Moore v. City of Philadelphia*, the United States Court of Appeals for the Third Circuit found that plaintiff police officers' conduct of reporting the existence of racial problems in the department in early conversations with supervisors was equivocal, and therefore insufficient to support a finding that they were engaged in protected activity opposing unlawful discrimination. The Court of Appeals explained:

> With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause"). *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006). Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Clark County v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination); *Aman* . . . (retaliation plaintiff must "act[ ] under a good faith, reasonable belief that a violation existed"). Moreover, the employee's "opposition" to unlawful discrimination must not be equivocal. *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir.1995).

*Moore*, 461 F.3d at 341 (parallel citation omitted).

In the *Barber* case, the Court of Appeals made clear that formal letters of complaint to an employer or the EEOC are not the only acceptable indicia of the requisite "protected conduct." *Id*. at 702, citing *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (acceptable forms of protected activity under Title VII's analogous opposition clause include formal charges of discrimination "as well as informal protests of discriminatory employment

16

practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges"). *Barber* " requires only that we analyze the message that [the plaintiff] conveyed, and not the medium of conveyance." *Id*.

The plaintiff's letter to Human Resources in *Barber* stated that he felt he had been treated unfairly and that the position was awarded to a less qualified individual, but he did not state or imply that the employer had violated any discrimination laws. The Court of Appeals found the letter was "just too vague" to support his retaliation claim or a finding that his job was eliminated because he engaged in behavior that was protected under the ADEA. *Id*.

Thus, while informal complaints about unlawful discrimination may suffice as protected activity, the message must at a minimum convey the speaker's express or implicit protest of discriminatory practices that violate the federal anti-discrimination statutes. In *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130 (3d Cir. 2006), the Court of Appeals for the Third Circuit further explained:

> . . . [C]ase law has established that opposition to an illegal employment practice must identify the employer and the practice -- if not specifically, at least by context. For example, in *Barber* . . . , we held that a letter to an employer's Human Resources Department was not protected activity because it did not specifically complain about age discrimination. The letter, which stated that the plaintiff felt that the position was given to a less qualified person, was too vague to constitute opposition to an unlawful employment practice of his employer because it neither "explicitly or implicitly" alleged that a protected characteristic was the basis for the adverse employment action. . . . A general complaint of unfair treatment is insufficient to establish protected activity under Title VII. *Id*.; *Dupont-Lauren v. Schneider (USA), Inc.*, 994 F.Supp. 802, 823 (S.D.Tex. 1998) ("Vagueness as to the nature of the grievance . . . prevents a protest from qualifying as a protected activity.").
>
> Moreover, there is no hard and fast rule as to whether the conduct in a

> given case is protected. *Barber*, 68 F.3d at 702. Instead, we evaluate the facts of
> each case in light of the statutory language and legislative intent. We have
> previously recognized that protected opposition conduct includes more than
> formal filing of charges before the EEOC. *Id*. . . .
>
> Our review of the jurisprudence in this area convinces us that
> Curay-Cramer's conduct in this case is not deserving of protection under the
> opposition language of Title VII. Despite the wide net cast by *Sumner*, we are not
> aware of any court that has found public protests or expressions of belief to be
> protected conduct *absent some perceptible connection to the employer's alleged
> illegal employment practice*. See *Dupont-Lauren*, 994 F.Supp. at 823 (holding
> that employee's statement was too vague to constitute protected opposition
> activity *where it did not apprize the employer of any practice viewed as
> discriminatory or accuse anyone at the employing company of engaging in
> discrimination*). As the Ninth Circuit made clear in *EEOC v. Crown Zellerbach
> Corp.*, it *must be possible to discern* from the context of the statement *that the
> employee opposes an unlawful employment practice*. 720 F.2d 1008, 1012-13 (9th
> Cir. 1983) (holding that employee engaged in protected activity by issuing a letter
> accusing his employer of "racism" and "discrimination").

*Curay-Cramer*, 450 F.3d at 135-36 (emphasis added).

**4. Plaintiff Did Not Engage in Protected Activity.** Measured against the foregoing, plaintiff's two brief and vague conversations with District officials can in no way be considered protected speech or activity opposing some unidentified discriminatory practice on the part of the District. The two incidents plaintiff claims to be voicing "advocacy for a disabled student" were, by his own words, simply telling Lauffer about the bus incident of February 23, 2007 (by plaintiff's account) and "suggesting" an alternative route that would perhaps help the situation, and his "explaining" that incident to a Board member two days later.

At best, these conversations were directly related to plaintiff's duties as a school bus driver in an attempt to offer solution to a problem with a student on the bus, but they did not contain a hint that the District violated any anti-discrimination laws with regard to Student Doe. At worst, this was speech or activity designed to cover plaintiff's own conduct in refusing to ride

Student Doe after February 9, 2007 without consulting the chain of command. Plaintiff does not specify the actual discriminatory practice the District was supposedly committing with regard to Student Doe, nor does he enlighten the Court as to how reporting the incident and suggesting an alternate route to officials for the District could qualify as protected speech or activity in opposition to a discriminatory practice.

After extensive and wide ranging discovery, plaintiff's claim of advocacy and protected activity in opposition to discrimination against Student Doe is simply too nebulous and self-serving to sustain a finding that he ever explicitly or implicitly opposed some discriminatory practice by the District, whether on February 9, 2007 or February 23, 2007, or thereafter. Accordingly, his prima facie case of retaliation must fail, and summary judgment on Counts I and II must be granted for defendants.

### V. Pennsylvania Whistleblower Act Claim.

Having granted summary judgment in favor of defendants on plaintiff's federal claims under section 1983, only the Pennsylvania Whistleblower Act claim remains. Once all federal claims have been dismissed from a case, "the case simply does not belong in federal court." *Lovell Mfg. v. Export-Import Bank of the United States*, 843 F.2d 725, 734-35 (3d Cir. 1988). Absent extraordinary circumstances, where the federal claims are dismissed on a motion for summary judgment, the district court should "refrain from exercising pendent jurisdiction [over the state law claims]." *Rolo v. City Investing Co. Liquidating Trust*, 845 F.Supp. 182, 215 (D. N.J. 1993) *aff'd* 43 F.3d 1462 (3d Cir. 1994) (citations omitted). *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide

the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

There are no "extraordinary circumstances" which warrant the exercise of jurisdiction and the Court declines to exercise supplemental jurisdiction over the Pennsylvania claim, which therefore will be dismissed without prejudice. Plaintiff may attempt to pursue this claim in state court pursuant to 42 Pa.C.S. § 5103(b) by filing the appropriate certifications. *See Williams v. F.L. Smith Mach. Co.*, 395 Pa. Super. 511, 577 A.2d 907 (1990); *Electronic Lab Supply Co. v. Cullen*, 782 F.Supp. 1016, 1021 (E.D.Pa.1991) (discussing transfer to Court of Common Pleas pursuant to 42 Pa. C.S. §5103(b)). Plaintiff may effect the transfer by promptly filing a certified transcript of the final judgment and the related pleadings to the proper tribunal. 42 Pa. C.S. § 5103(b)(2).

### VI. Conclusion.

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. no. 39) will be granted. Judgment will be entered in defendants' favor on Counts I and II of the Complaint, and Count III will be dismissed, without prejudice.

An appropriate order will be entered.

<div style="text-align: right;">
s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge
</div>

cc: all counsel of record